# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 5:19-cr-741 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OPINION AND |
| | ) | ORDER |
| MICHAEL HAKIM MORALE, | ) | |
| | ) | |
| DEFENDANT. | ) | |

This matter is before the Court on the motion of defendant Michael Hakim Morale ("Morale") for release/bond. (Doc. No. 18 ["Mot."].) Plaintiff United States of America (the "government") opposes the motion. (Doc. No. 20 ["Opp'n"].) For the reasons that follow, Morale's motion is DENIED.

## I. BACKGROUND

On December 3, 2019, Morale was indicted on one count of being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). (Doc. No. 1 [Indictment].) At his arraignment on December 30, 2019, Morale waived his right to a detention hearing and agreed to be detained without bail pursuant to 18 U.S.C. § 3142(e) and (i), but he reserved "the right to raise the issue of detention at a later date should circumstances change." (Doc. No. 7 [Waiver of Detention Hearing and Order ("Waiver")].) Morale is currently incarcerated at Northeast Ohio Correctional Center ("NEOCC"), and a jury trial is scheduled for July 6, 2020. (3-25-2020 Minute Order.)

On April 17, 2020, Morale filed the present motion in which he requested that he be granted bond. (Mot. at 85.) He submits that "circumstances have changed [since his arraignment] as a result of the risk to his health and safety due to the rapid spread of the deadly COVID-19 virus and other circumstances related to his incarceration." (*Id.*) While he is currently in disciplinary segregation, he anticipates that soon he will be returned to the general population where he will not be able to practice social distancing to protect himself from the virus. (*Id.* at 86-87.) He also complains that "he is being targeted by [a group of inmates] who are a part of a gang. He has been attacked twice by multiple individuals." (*Id.* at 87.)

If the Court grants his request, Morale represents that he would stay in the home of his wife and two-year-old child. (*Id.* at 88.) According to Morale, "his release with the conditions including house arrest and GPS monitoring will ensure his appearance and protect the public." (*Id.* at 87.)

## II. DISCUSSION

A detention hearing "may be reopened before or after a determination by the judicial officer, at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community." 18 U.S.C. § 3142(f). The changed circumstances Morale relies upon to reopen the detention hearing are the recent COVID-19 pandemic and the attacks by gang members. While the Court agrees that the onset of the COVID-19 pandemic constitutes changed circumstances sufficient to warrant a reopening of the detention order, the Court ultimately concludes that Morale is not entitled to release.

Under the Bail Reform Act, 18 U.S.C. § 3142(i), "[t]he judicial officer may, by subsequent order, permit the temporary release of [a pretrial detainee], in the custody of a United States Marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason." In *United States v. Clark*, No. 19-40068-01-HLT, 2020 WL 1446895 (D. Kan. Mar. 25, 2020) (citing 18 U.S.C. § 3142(i)), the district court observed:

> The court is mindful of the unprecedented magnitude of the COVID-19 pandemic and the extremely serious health risks it presents. But, in that context, a defendant should not be entitled to temporary release under § 3142(i) based solely on generalized COVID-19 fears and speculation. Rather, the court must make an individualized determination as to whether COVID-19 concerns present such a compelling reason in a particular case that temporary release is necessary under § 3142(i). In making that determination, the [Court] will evaluate at least the following factors: (1) the original grounds for the defendant's pretrial detention, (2) the specificity of the defendant's stated COVID-19 concerns, (3) the extent to which the proposed release plan is tailored to mitigate or exacerbate other COVID-19 risks to the defendant, and (4) the likelihood that the defendant's proposed release would increase COVID-19 risks to others.

*Id.* at *3. At least one district court in the Sixth Circuit has followed the approach laid out in *Clark*, and this Court, likewise, agrees that this guidance provides a useful framework for addressing requests for release under § 3142. *See, e.g., United States v. Smoot*, No. 2:19-CR-20, 2020 WL 1501810, at *2-3 (S.D. Ohio Mar. 30, 2020) (applying analysis set forth in *Clark* and denying defendant's motion for immediate release under the Bail Reform Act due to COVID-19).

As to the first factor—the original grounds for the defendant's pretrial detention—the Court reiterates that Morale waived his right to a detention hearing and agreed to be detained without bail. Had the magistrate judge entertained a motion for bond, it is likely that it would have been denied because Morale represents a serious danger to others and the community, and

3

the Court now makes that determination. Morale has an extensive criminal history that includes assault, criminal gang activity, and attempted robbery, as well as multiple convictions for having weapons while under a disability, domestic violence, and disorderly conduct. (Doc. No. 17 [Revised Offense Level and Criminal History Report ("Report")] at 71-82.) When coupled with the present charge—yet another weapons offense—Morale's potential for violence is evident.

Additionally, while Morale underscores the recent attacks upon his person at NEOCC as evidence of his need to be released, the Court has reviewed the reports from those attacks and it appears that Morale was the aggressor in one or more of the incidents. (*See* Opp'n at 98.) Indeed, Morale concedes that following each attack, he was placed in disciplinary segregation as punishment. (Mot. at 86.) The Court agrees with the government that these attacks actually reinforce the fact that Morale is a violent and dangerous inmate who poses a danger to others at NEOCC, and, if released, would pose a danger to the community. This first factor counsels strongly against release.

As for the second factor—the specificity of defendant's stated COVID-19 concerns— Morale offers only his generalized concern that he and other inmates are at a heightened risk of contracting COVID-19 by virtue of the realities of incarceration. (Mot. at 86-87.) He also cites the deaths from COVID-19 at a different penal institution. (*Id.* at 87.) But, to date, there are no confirmed cases of COVID-19 among inmates at NEOCC. (Opp'n at 92-93 [citing Ohio government website].) Moreover, Morale has not alleged that he has been diagnosed with COVID-19, that he has been exposed to anyone with the virus, or even that he has risk factors that place him at a higher risk of contracting COVID-19.

Additionally, as explained in the government's response, U.S. Marshals Service has taken

substantial precautions to mitigate the spread of the COVID-19 virus within the prison community. These preventive measures include: (1) aggressive screening, isolation, and treatment of suspected cases of the virus; (2) the placement of limitations on prisoner movements within facilities; and (3) the institution of procedures for staff to call-off and obtain medical care if exhibiting symptoms to avoid exposure to inmates. Additional measures have been taken at NEOCC, where Morale is currently incarcerated, to stop the spread of the virus. (*Id.* at 93-97.) While the Court is sympathetic to Morale's general concern about the COVID-19 virus, "speculation about future conditions does not constitute a 'compelling reason' for temporary release." *See United States v. Bastianelli*, No. 17-305, 2020 WL 1493559, at *1 (W.D. Pa Mar. 27, 2020) (collecting cases denying requests for temporary release due to generalized concerns about COVID-19). This factor also weighs against release.

The third factor—effect of release plan on defendant—also favors continued detention. Morale offers no details about the circumstances under which he would reside in home detention, other than to represent that he would reside with his wife and daughter, and that the Court could fashion conditions to ensure his appearance at future court proceedings (Mot at 87-88.) Yet, Morale's well documented history of supervised release violations and drug use/abuse suggests that he is unwilling or unable to adhere to court-imposed conditions of release. (Report at 71-82.) More to the point with respect to this third factor, Morale offers no evidence on what precautions will be taken in his wife's home, including screening and isolation practices, that would keep him safe and limit his exposure to COVID-19. Because the Court cannot even begin to evaluate whether the release plan reduces the risk to Morale, this factor mitigates against temporary release.

Finally, the fourth factor—effect of the release plan on the public—does not favor temporary release. Again, given Morale's prior criminal history and his history of supervised release violations and drug use/abuse, the Court is far from convinced that Morale would remain compliant on temporary release. "A defendant who is unable to comply with conditions of release poses potential risk to law enforcement officers who are already tasked with enforcing shelter-in-place orders in many cities and counties, pretrial services officers who come into contact with the defendant for supervision, and others if that individual is taken back into custody." *Clark*, 2020 WL 1446895, at *7. Courts have found that the increased burden on pretrial services to monitor high-risk prisoners on home detention during this national crisis, as well as the likely risk to law enforcement who would have to take a non-compliant home detainee back into custody, also weigh in favor of denying motions for temporary release. *See, e.g., United States v. Martin*, No. PWG-19-140-13, 2020 WL 1274857, at *4 (D. Md. Mar. 17, 2020) (denying request for release due to COVID-19, noting that location monitoring puts pretrial services officers at risk); *United States v. Aiad-Toss*, No. 4:19-cr-00521, 2020 WL 1514482 (N.D. Ohio Mar. 30, 2020) (observing that "releasing . . . to home detention and electronic monitoring creates its own risks and undue burden on pretrial services").

The Court finds that Morale has not established his burden of demonstrating reasons sufficient to persuade the Court that temporary release is proper.

### III. CONCLUSION

For the forgoing reasons, as well as the reasons set forth in the government's response, the motion of defendant Morale for release/bond is DENIED.

**IT IS SO ORDERED**.

Dated: April 27, 2020

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**